IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIANNA APFELBAUM KULA, *et al.*, | No. 4:17-CV-02122 |
| Plaintiffs, | (Judge Brann) |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

MEMORANDUM OPINION

APRIL 23, 2021

## I.   BACKGROUND

This case arises from the deaths of Michael and Christina Apfelbaum resulting from a plane crash occurring on September 7, 2015.[1]  Following this accident, Plaintiffs sued Defendant the United States (under the doctrine of vicarious liability) for the negligence of the air-traffic controller instructing Mr. Apfelbaum, who was piloting the aircraft at the time of the accident.[2]  Plaintiffs allege that this air-traffic controller gave Mr. Apfelbaum incorrect instructions and failed to comply with procedures set forth by the Federal Aviation Administration ("FAA"), which caused Mr. Apfelbaum to become disoriented and subsequently lose control of the plane.

---

[1]   Doc. 1.
[2]   *Id.*

After this Court denied Defendant's motion for summary judgment,[3] trial was scheduled to begin on May 10, 2021.[4] The parties have now filed three operative motions in limine seeking to exclude certain evidence at trial.[5] These motions seek to exclude: (1) the probable-cause determination from the National Transportation Safety Board ("NTSB") report created in response to the present incident and two recommendations regarding air-traffic controller training submitted to the FAA by the NTSB in 2001 and 2016[6]; (2) evidence from a report drafted by defense expert Brian Schiff[7]; and (3) testimony from three of Defendant's expert witnesses.[8]

These motions are now ripe for disposition. For the following reasons, they are granted in part and denied in part.

## II.   DISCUSSION

Motions *in limine* are discretionary tools used by courts to exclude evidence and thus "narrow the evidentiary issues for trial and [] eliminate unnecessary trial

---

[3]  Doc. 47.
[4]  Doc. 68.
[5]  Doc. 70; Doc. 72; Doc. 74.  The fourth motion in limine need not be addressed, as Defendant has indicated that it does not intend to introduce at trial the evidence specified in that motion. Doc. 76; Doc. 80 ("[T]he United States does not intend to offer [the specified] testimony . . . at trial.").
[6]  Doc. 70.  This motion also sought to preclude introduction of the NTSB's probable-cause determination made after investigating the causes of the present accident.  Plaintiffs, however, do not contest that this determination is inadmissible by statute.
[7]  Doc. 72.
[8]  Doc. 76.

interruptions."[9]  A court may consider a motion *in limine* when it is more efficient to rule on the admissibility of evidence before trial begins; such motions are often useful because they provide for "more thorough briefing than would likely be available during the course of trial."[10]  "Even so, if the context of trial would provide clarity, the Court may defer the issues until trial."[11]

"[M]otions *in limine* often present issues for which final decision is best reserved for a specific trial situation."[12]  Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context."[13]  Specifically, "*pretrial* Rule 403 exclusions should rarely be granted . . . [as] a court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence."[14]  Regardless, "*in limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[15]

---

[9] *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citing *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

[10] *Frinter v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012) (citing *Japanese Elec.*, 723 F.2d at 260).

[11] *Id.* (citations omitted).

[12] *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997).

[13] *Leonard v. Stemetech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).

[14] *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).

[15] *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

### A. NTSB Probable-Cause Determination and Safety Recommendations

First, the United States seeks to exclude the NTSB's probable-cause determination relating to this incident and two NTSB safety recommendations created in 2001 and 2016.[16] Title 49 U.S.C. § 1154(b) provides that "[n]o part of a report of the [NTSB], related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." An NTSB report is defined by regulation as "the report containing the Board's determinations, including the probable cause of an accident, issued either as a narrative report or in a computer format."[17]

Plaintiffs do not contest that § 1154(b) unequivocally prohibits introduction of the probable-cause determination made in relation to *this* accident.[18] But Plaintiffs argue that the NTSB safety recommendations are admissible because they do not reference or involve the accident at issue here. Plaintiffs offer a textualist reading of § 1154(b), contending that these recommendations are neither: (1) "the report" as defined by 49 C.F.R. § 835.2; nor (2) admitted or used in a civil action "resulting from a matter mentioned in the report."[19]

In opposition, Defendant cites two cases holding NTSB recommendations (including one referenced in this case) inadmissible under § 1154(b). In one, the

---

[16] The parties have not provided these recommendations for review, but they appear to reference air-traffic controller training on handling certain emergency situations. Doc. 71 at 5.
[17] 49 C.F.R.§ 835.2.
[18] The Court agrees and grants Defendant's motion on this point.
[19] 49 U.S.C. § 1154(b).

courts' ruling was premised on two factors. The first was deference given to a letter drafted by the NTSB in 2008 expressing the "NTSB's long-standing interpretation" of § 1154(b) as precluding "admission of safety recommendations.[20] The second was § 835.2's recognition of "Congress's strong desire to keep the [NTSB] free of the entanglement of" civil suits and "to ensure that the Board does not exert an undue influence on litigation.[21] The other case addressing this issue focused largely on Congress's purpose in enacting § 1154(b).[22]

The Court concludes that these opinions cannot be squared with a textualist reading of this statute. The Supreme Court "has explained many times over many years that, when the meaning of the statute's terms is plain, [the Court's] job is at an end."[23] This is because "[t]he people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration."[24]

Section 1154(b) directly implicates these concerns. Its language is clear: NTSB reports are inadmissible in cases "*resulting from a matter mentioned in the*

---

[20] *In re Air Crash at Lexington, Ky. Aug. 27, 2006*, 2008 WL 2796875, at *4 (E.D. Ky. July 18, 2008).
[21] *Id.* at *5.
[22] *In re Jacoby Airplane Crash Litig.*, 2007 WL 2746833, at *9 (D.N.J. Sept. 19, 2007) ("Congress sought to insulate the NTSB from expending unnecessary energy choosing its words, lest those words become part of the arsenal of a civil litigant.").
[23] *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1749 (2020) (Gorsuch, J.).
[24] *Id.* (citations omitted).

*report.*"[25] Even assuming that the recommendations constitute "reports,"[26] it is evident that this case did not arise from any matter referenced in them. Moreover, these documents, which offer recommendations to the FAA regarding air-traffic controller training, are not connected to the accident underlying this case in any meaningful way. Consequently, the Court cannot hold them inadmissible under § 1154(b). Defendant's motion to exclude these recommendations is thus denied.

### B. Brian Schiff's Report

Next, Plaintiffs seek to exclude statements from a report authored by Brian Schiff on two bases. First, they wish to preclude certain statements as inadmissible character evidence (or evidence of past bad acts). And second, they assert that several statements are inadmissible as irrelevant speculation regarding Mr. Apfelbaum's thoughts and motivations. Each argument is discussed in turn.

#### 1. Character Evidence

Federal Rule of Evidence 404(a) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."[27] Rule 404(b) further prohibits the introduction of evidence regarding "any other crime, wrong, or act," when proffered to show a person's character and that "on a particular occasion the

---

[25] 49 U.S.C. § 1154(b) (emphasis added).
[26] The text of section 835.2 casts this into doubt. 49 C.F.R. § 835.2 (defining an NTSB "accident report" as "*the* report containing the Board's determinations, including the probable cause of *an accident*, issued either as a narrative report or in a computer format ('briefs' of *accidents*).").
[27] Fed. R. Evid. 404(a).

- 6 -

person acted in accordance" with that character.[28]  The justification for this rule is that evidence of one's character "is of slight probative value and tends to distract the trier of fact from the main question of what actually happened on a particular occasion."[29]

Examples of evidence excluded under Rule 404 include: evidence of a pilot's training record showing that the pilot had scored poorly on flight-simulator tests and was considered "weak in aircraft knowledge and instrument flying" by his instructor[30]; evidence of a train engineer's history of past safety infractions, including for speeding and improper use of brakes[31]; and evidence of an employee's driving file which contained an automatically generated report that the employee had driven erratically in the past.[32]

Character evidence may still be admissible, however, where it is used for a purpose other than to demonstrate a party's conformity with his or her character or character trait.[33]  For instance, evidence that would otherwise be inadmissible

---

[28]   *Id.* 404(b).
[29]   *Jones v. S. Pac. R.R.*, 962 F.2d 447, 449 (5th Cir. 1992) (citations omitted); *see Prescott v. R & L Transfer, Inc.*, 111 F. Supp. 3d 650, 661 (W.D. Pa. 2015).
[30]   *Moorhead v. Mitsubishi Aircraft Int'l, Inc.*, 828 F.2d 278, 287 (5th Cir. 1987) (noting that a failure to exclude such evidence would be grounds for reversal had the case been tried by a jury).
[31]   *Jones*, 962 F.2d at 449 ("[The engineer's] prior safety infractions had little to do with what actually happened on the day of the wreck.  Such evidence was not admissible to show that Haley was negligent in conducting the train." (citations omitted)).
[32]   *Prescott v. R & L Transfer, Inc.*, 111 F. Supp. 3d 650, 662 (W.D. Pa. 2015) ("[T]he only remaining relevancy of the Report is to show that [the employee] acted in conformity with his prior conduct, which is clearly prohibited under Rule 404.").
[33]   *United States v. Lee*, 612 F.3d 170, 186 (3d Cir. 2010) ("Where . . . the evidence also tends to prove some fact besides character, admissibility depends upon whether its probative value

under Rule 404 may be admitted to rebut the opposing party's position on a particular issue.[34]  To determine whether evidence is admissible under Rule 404(b), courts use a four-step test.[35]  Under this test, evidence is admissible if the following requirements are met:

> (1) The evidence is offered for a proper purpose under Rule 404;
>
> (2) The evidence is relevant under Rule 402;
>
> (3) The evidence's probative value outweighs its prejudicial effect under Rule 403; and
>
> (4) The court charges the jury to consider the evidence only for the limited purpose for which it is admitted.[36]

Plaintiffs seek to exclude a number of statements from Schiff's report that they claim Defendant intends to offer as character evidence.[37]  Some refer to Michael Apfelbaum's alleged inexperience and lack of aviation proficiency, while others reference past acts tending to show these traits.  Statements that the Court finds objectionable include that Mr. Apfelbaum:

- Was inexperienced and poorly trained[38];

---

outweighs its prejudicial effect." (internal quotation marks omitted) (quoting *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992))).

[34] *See id.*
[35] *Id.*
[36] *Sampson*, 980 F.2d at 886 (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).
[37] Doc. 82-1.
[38] Specifically, Schiff's report states that Mr. Apfelbaum: failed the Instrument Knowledge Test four times before passing on his fifth try, *id.* at 7, just "barely" satisfied his certification requirements, *id.*, received inconsistent and sporadic training, *id.* at 7, 15, 45, and failed to satisfy the requirements of his insurance company. *Id.* at 18.

- Repeatedly made errors when logging previous flights and flight-times[39];

- Had a history of "poor fuel planning," and in fact failed to properly fuel the aircraft which he was flying on the date of the accident[40];

- Exhibited an anti-authority, impulsive, invulnerable, and "macho" attitude throughout his flying career[41]

- Was likely overly reliant on autopilot (or, as Schiff put it, an "autopilot junkie") in a way that contributed to the accident[42]; and

- Took off without clearance at the beginning of the flight resulting in the accident (which Schiff characterizes as "careless and risky").[43]

It is evident that these statements would be inadmissible under Rule 404 if they were offered solely to show that Mr. Apfelbaum has a poor piloting history or is generally reckless or careless when operating aircraft. But because the parties have not yet set forth the definitive theories they intend to raise at trial, the Court cannot discern, at this point, that this evidence could *only* be offered for an inadmissible purpose.[44] Accordingly, the Court denies the bulk of Plaintiffs' motion without prejudice. Plaintiffs may renew their objections at trial after the parties' arguments have been more fully developed.

The Court will, however, exclude certain statements that appear to serve no other purpose than to demonstrate Mr. Apfelbaum's character. This includes the

---

[39] *Id.* at 4, 9-12.
[40] *Id.* at 41.
[41] *Id.* at 42-43.
[42] *Id.* at 34, 42.
[43] *Id.* at 25.
[44] For example, if Plaintiffs introduce evidence regarding the adequacy of Mr. Apfelbaum's training, Defendant would be entitled to introduce evidence in rebuttal.

report's references to Mr. Apfelbaum's purported "hazardous attitudes," his repeated failure of the Instrument Knowledge Test, and the fact that he was just "barely" certified. Similarly, the statements likening Mr. Apfelbaum to "autopilot junkies" who frequently get into accidents have no bearing on this case and are thus inadmissible. Consequently, the Court grants Plaintiffs' motion as to these statements.[45]

## 2. Speculative Evidence

Plaintiffs also seek to exclude statements from Schiff's reports under Rule 702. Rule 702 has "two major requirements": (1) "'the proffered expert' must be qualified to express an expert opinion,' based on the expert's 'knowledge, skills, and training'"; and (2) "the proffered expert opinion must be reliable."[46] Interpreting this rule, courts have prohibited expert witnesses from opining on what they think "another individual 'thought,' 'believed,' or 'felt.'"[47] This is

---

[45] The Court also notes that many statements in this report appear to have little relevance to this case. Examples of such statements include those referencing Mr. Apfelbaum's history of "poor fuel planning," the repeated errors in his logbook, his tendency to rely on autopilot, or his history of failing to adequately fuel aircraft before flight. While these issues *may* be relevant to trial, the Court cautions Defendant that such evidence will not be admitted if it does not pertain to the accident in this case.

[46] *Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 626 (E.D. Pa. 2011) (cleaned up) (quoting *In re TMI Litig.*, 193 F.3d 613, 664 (3d Cir. 1999)).

[47] *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417, 423 (W.D. Pa. 2006) (prohibiting an insurance claims-adjusting expert from opining on the subjective intent of claims handlers); *e.g.*, *Quagliarello*, 802 F. Supp. 2d at 626 (precluding a police liability expert from testifying about an officer's state of mind because he lacked the "knowledge, skills, and training in assessing state of mind," and because "it is doubtful any expert could testify to state of mind").

because "[a]n expert is simply not in any better position than the jury to assess another's subjective intent."[48]

It is thus the Court's opinion that statements from Schiff's report purporting to represent Mr. Apfelbaum's subjective state of mind are inadmissible under Rule 702. This includes statements that Mr. Apfelbaum was "clearly in a hurry to depart" the Sarasota Airport on the date of the accident,[49] and that Mr. Apfelbaum was "suspect about what he was doing" when he asked the air-traffic controller "how do you like this route of flight?"[50] While the Court finds it unnecessary to exhaustively specify which statements are admissible and which are not, the Court permits the parties to revisit these objections should any issues arise at trial.

### C. Expert Testimony

Finally, Plaintiffs seek to exclude expert testimony that Plaintiffs claim would be cumulative and thus inadmissible under Rule 403. Rule 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless presenting cumulative evidence."[51] Plaintiffs specifically wish to prevent Defendant's accident reconstruction expert, aeromedical/spatial disorientation

---

[48] *Gallatin*, 410 F. Supp. 2d at 423 (citing *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, 2004 WL 783356, at *6 (N.D. Ill. Jan. 28, 2004)).
[49] Doc. 82-1 at 26.
[50] *Id.* at 32.
[51] Fed. R. Evid. 403.

expert, and air traffic control expert from testifying on the question of "the piloting care and skill demonstrated by Mr. Apfelbaum during the accident flight."[52]

Defendant argues, and this Court agrees, that Plaintiffs' motion is premature. As stated above, "Rule 403 exclusions should rarely be granted" before a court receives the benefit of a full record with which the court might better contextualize the party's objection.[53] Further, the Court is uncomfortable ruling on Plaintiffs' motion, which, at this stage, is based purely on "speculative hypotheses as to what" Defendant's witnesses might testify.[54] Accordingly, Plaintiffs' motion *in limine* is denied without prejudice. Plaintiffs remain free to raise an objection at trial if it appears Defendant's expert testimony has become cumulative.

## III. CONCLUSION

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[52] Doc. 75 at 5.
[53] *See Paoli*, 916 F.2d at 859.
[54] *Burdyn v. Borough*, 2017 WL 394326, at *2-3 (M.D. Pa. Jan. 26, 2017) (denying a similar motion seeking exclusion under 403 because it was based primarily on the plaintiff's speculation regarding what expert witnesses would say at trial).